IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| KEVIN JOSEPH BRYAN, | : Case No. 1:21-cv-00315 |
| Plaintiff, | : |
| | : District Judge Michael R. Barrett |
| vs. | : Magistrate Judge Caroline H. Gentry |
| | : |
| WILLIAM JEWELL, *et al.*, | : |
| | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION

Plaintiff, an Ohio inmate proceeding without the assistance of counsel, filed this civil rights action against correction officers William Jewell and Travis Wellman. Plaintiff alleges that Defendant Jewell broke his thumb and that Defendant Wellman failed to protect him. (Complaint, Doc. No. 3.) Plaintiff asserts an excessive force claim against Defendant Jewell and a failure-to-intervene claim against Defendant Travis Wellman, both under the Eighth Amendment to the United States Constitution.

This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. No. 35) and supporting exhibits, Plaintiff's Response in Opposition (Doc. No. 43), and Defendants' Reply (Doc. No. 44). The undersigned will not consider either Plaintiff's sur-reply (Doc. No. 45), which was filed in violation of S.D. Ohio Civ. R. 7.2(a)(2), or Plaintiff's defective affidavits (Doc. No. 43, PageID 491; Doc. No. 46).[1]

---

[1] Plaintiff attached a document titled "Affidavit of Plaintiff" to his Response in Opposition (Doc. No. 43, PageID 491) but that document was not notarized. After the briefing on Defendants' Motion had closed, Plaintiff sought leave to submit a notarized affidavit that was substantively different from his original purported affidavit. (Doc. No.

1

I.    **STATEMENT OF FACTS**

The following facts are taken from the admissible evidence in the record, namely, the evidence submitted in support of Defendants' Motion for Summary Judgment (Doc. No. 35). Plaintiff's allegations are included only for purposes of describing his claims.

The relevant events occurred on January 2, 2021. (Supervisor's Use of Force Summary Report, Doc. No. 35-11, PageID 203.) Following an altercation with prison staff,[2] Plaintiff complied with an order to "cuff up" – i.e., to present his hands and submit to being placed in handcuffs and leg shackles. (*Id.*) After Plaintiff was handcuffed and shackled, he was escorted from his cell in block J2 to "the J2S room," where he was strip-searched without incident. (Doc. No. 35, PageID 150.) While Plaintiff was still handcuffed and shackled, he was escorted from block J2, through "K corridor," to cell K2-20. (Doc. No. 35, PageID 149-50.)

The parties dispute what happened while Plaintiff was being escorted. Defendant Wellman reported that Plaintiff "had attempted to assault staff and was refusing to move forward" despite being given multiple orders to walk to K2. (Wellman Use of Force Report, Doc. 35-11, PageID 205.) When Plaintiff refused to obey his orders, Defendant Wellman applied "an escorting technique by placing my left hand on [Plaintiff's] right wrist and my right hand on [Plaintiff's] right elbow." (*Id.*) Defendant Wellman is trained

---

46.) The Court denied Plaintiff's request to submit a different affidavit but gave him leave to file a notarized affidavit that was substantively identical to his original affidavit. (Doc. No. 48.) Plaintiff has not done so.

[2] Defendants state that "[non-party] Lt. Osborne used a chemical agent, typically know as O.C. spray, against Plaintiff Bryan after Plaintiff boarded up his cell and attempted to throw a battery at Lt. Osborne." (Doc. No. 35, PageID 149.) Plaintiff does not specifically address the nature of the altercation. (*See* Doc. No. 1-1, PageID 17.) The details are, in any event, immaterial, as the parties agree that "[the] actions which make up Plaintiff's Complaint commence after he has left [block] J2." (Doc. No. 35, PageID 149.)

2

in using the proper amount of force when employing escorting techniques. (Wellman Affidavit, Doc. No. 35-9, PageID 191). He averred that he did not use excessive force and did not break Plaintiff's thumb. (*Id*. at PageID 192.) He also did not see Defendant Jewell do so. (*Id*.) He did not claim to have felt threatened in any way. (*Id*.)

When they reached K-Corridor, Defendant Jewell began to help Defendant Wellman escort Plaintiff after noticing that Plaintiff "was resisting being escorted and refusing to walk." (Jewell Use of Force Report, Doc. 35-11, PageID 208.) Defendant Jewell escorted Plaintiff by "securing [Plaintiff's] left arm with my left hand and my right hand on his left wrist." (*Id*.) Defendant Jewell is trained in using the proper amount of force when employing escorting techniques. (Jewell Affidavit, Doc. No. 35-8, PageID 189). He averred that he did not use excessive force and did not break Plaintiff's thumb. (*Id*. at PageID 192.) He also did not see Defendant Wellman do so. (*Id*.) He did not claim to have felt threatened in any way. (*Id*.) He reported that Plaintiff continued to resist "by trying to stop or pull away" until they reached his cell, where Plaintiff "was secured and checked by medical." (Doc. 35-11, PageID 208.)

Nurse Mault examined Plaintiff in his cell for any injuries caused by the use of force. (Doc. No. 35-3, PageID 179.) Plaintiff refused to be examined (including having his vitals taken) and instead demanded to be given his breakfast on time. (*Id*.) Nurse Mault noted that Plaintiff was agitated and non-cooperative but had a steady gait, clear speech, and good eye contact with no acute distress either noted or reported, although the exposure to O.C. spray had altered his skin integrity. (*Id*.) Nurse Mault did not observe or suspect that Plaintiff had any serious medical needs, including respiratory distress or

3

broken fingers. (Doc. 35-10, PageID 193.) Plaintiff did not inform her that his thumb was broken or injured in any way. (*Id*.)

On January 7, 2021, Plaintiff submitted a Health Services Request. He sought medical care because "had [his] index finger and thumb broke on January 2, 2021." He explained that he just received an HSR to address the issue. (Doc. No. 35-4, PageID 183.)

Nurse Stalnaker saw Plaintiff on January 12, 2021. (Doc. No. 35-5, PageID 184.) Plaintiff reported "continued pain to left thumb and wrist after reported use of force January 2, 2021" and "said he had to 'pop my thumb back in place.'" (*Id*.) He rated the severity of his pain as 8 out of 10 and requested an x-ray and evaluation. (*Id*.) He said that he was unable to move his left thumb and could move his left wrist but it hurt to do so. (*Id*. at PageID 185.) Nurse Stalnaker noted bruising, which she described as "anterior aspect left thumb at the base." (*Id*.) She prescribed Ibuprofen and referred Plaintiff to an advanced-level medical provider (*Id*. at PageID 186.)

Although Plaintiff initially refused to attend an appointment with an advanced-level medical provider (Doc. Nos. 35-6 & 35-7), he eventually did so. X-rays taken on January 19, 2021 showed an acute first metacarpal base fracture in his left thumb with comminution, mild displacement and soft tissue swelling. (Doc. No. 35-12, PageID 397.) The diagnosis was also described as a Bennett's fracture of left thumb. (*Id*. at PageID 353.) The medical provider recommended surgery and Plaintiff agreed. (*Id*. at PageID 395.) On February 8, 2021, Plaintiff received an open reduction and internal fixation surgery for that fracture, which involved the insertion of plates and screws. (*Id*. at PageID 268, 276 & 280.) Plaintiff apparently made a full recovery. (*Id*. at PageID 269.)

In his unsworn allegations, Plaintiff asserts that Defendant Jewell, who was the officer on Plaintiff's left side, "broke his thumb through numerous maneuvers of bending and pulling and yanking." (Doc. No. 3, PageID 38; Doc. No. 43, PageID 477.) Plaintiff alleges that this same officer told Plaintiff to "fight back and give me a reason to slam you on your face." (Doc. No. 3, PageID 38.) Plaintiff alleges that, in light of Defendant Jewell's statement and actions, the officer on his right side (Defendant Wellman) had a duty to intervene. (*Id.*) Plaintiff also claims that he did not resist when Defendants were escorting him. (Doc. No. 43, PageID 478.) He asserts that Defendants' alleged actions (and inaction) caused him "severe pain, swelling, bruising, and disfigurement" and that the injury to his thumb necessitated extensive surgery, including bone grafting and the insertion of plates and screws. (Doc. No. 3, PageID 39.)[3]

## II. LEGAL STANDARDS

### A. Motions For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on the claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "***shall*** grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law." *Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*,

---

[3] In his Response in Opposition—but not in his Complaint—Plaintiff alleges that his "leg shackles were secured too tightly around his ankles," resulting in permanent scars. (Doc. No. 43, PageID 478.) Because this allegation was not included in the Complaint and Plaintiff did not seek leave to amend his Complaint in a timely manner to raise this allegation, it is not properly before the Court and will not be further considered.

477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id*.

The party claiming that a fact is either undisputed or genuinely disputed must support its assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). The Court may only consider **admissible** evidence, which does not include a party's unsworn statements. Fed. R. Civ. P. 56(c)(2) & (4); *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847 (6th Cir. 2010). "Unsubstantiated, self-serving assertions" are likewise insufficient. *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). A plaintiff's *pro se* status does not relieve him of his burden to respond with admissible evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010). The non-moving party must show

that more than "a mere scintilla of evidence" supports the essential elements of its claims. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). A mere "metaphysical doubt" is insufficient. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). If the non-moving party does not properly support its assertions of fact or properly address the moving party's assertions of fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court may not substitute its own judgment for that of a jury and decide a case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury," or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id.* (internal citations omitted). The Court is required to draw all reasonable inferences in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

B. **Blatant Contradiction By Objective Evidence**

When it rules on a motion for summary judgment, the Court is not permitted to adopt a version of facts that is "blatantly contradicted" by objective evidence in the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the *Scott* case, which involved a high-speed police chase, plaintiff contended that he "remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns. He did not run any motorists off the road. Nor was he a threat to pedestrians in the shopping center parking lot, which was free from pedestrian and vehicular traffic . . . ." *Id*. at 378-79. Video footage of the chase, however, portrayed an objectively different version of events:

> [W]e see respondent's vehicle racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast. We see it swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit. We see it run multiple red lights and travel for considerable periods of time in the occasional center left-turn-only lane, chased by numerous police cars forced to engage in the same hazardous maneuvers just to keep up. Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury.

*Id*. at 379-80. The Supreme Court held that the appellate court erred by adopting the plaintiff's version of events, which was demonstrably false. *Id*. at 380-81 ("Respondent's version of events is so utterly discredited by the [video] record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

The Sixth Circuit noted the narrowness of the *Scott* holding in *Coble v. City of White House*, 634 F.3d 865 (6th Cir. 2011). The *Coble* plaintiff alleged that a defendant

8

police officer subjected him to excessive force by forcing him to walk several feet after breaking his leg. *Id*. at 866. The parties' versions of events differed markedly:

> [The plaintiff] testified that [the defendant] pulled him up by the handcuffs, and, pushing him from behind, walked him 7 or 8 steps on his broken ankle, leaving a 34-foot trail of blood. [The plaintiff] testified that [the defendant] would have known that his leg was broken because bones were sticking out of [the plaintiff's] leg, his tennis shoe was laid over sideways, one of his legs was shorter than the other, and he was screaming and calling [the defendant] names. [The plaintiff] testified that when [the defendant] finally stopped, he let go of the handcuffs and dropped [the plaintiff] face-first on the concrete. . . . [The defendant] testified that, after handcuffing [the plaintiff], he and [another police officer] helped [the plaintiff] to a standing position and began walking with him toward the patrol car. After three or four steps, [the plaintiff] said his leg was broken. [The defendant] testified that he looked down, saw that [the plaintiff's] leg was broken, and immediately sat him down on the driveway.

*Id*. The events were not recorded on video but were captured by the microphone that the defendant wore. *Id*. The trial court noted that

> the audiotape reveals only the sound of shuffling bodies . . . and [the plaintiff] was silent. After a few moments, [he] cried out that his leg was broken, and the shuffling stopped. An officer said, "Sit down!" There is no audible noise that once [sic] could associate with a body dropping or [blood] "splattering" to the pavement.

*Id*. at 867.

Relying on *Scott*, the trial court declined to accept the plaintiff's version of events after finding that it was blatantly contradicted by the audio recording. *Id*. The Sixth Circuit reversed. It explained that lack of corroboration is not the same as a contradiction and concluded that "[a] reasonable jury could believe [the plaintiff's] version of events" even in light of the audio recording. *Id*. at 869-70. The Sixth Circuit instructed lower courts to "allow cases to proceed to trial even though a party's evidence is inconsistent,

9

because in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Id*. at 870 (internal citations omitted).

The rule that emerges – and that this Court applies – is that objective evidence such as video footage will "blatantly contradict" a party's account of events "only if what is depicted on the video footage is ***necessarily inconsistent*** with that account." *Luke v. Johnson*, No. 1:17-CV-00063, 2021 WL 4453635, at *25 (S.D. Ohio 2021) (Cole, D.J.) (emphasis added). *C.f. Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 536 (6th Cir. 2018) (no blatant contradiction where, although not depicted on video, it was "plausible" that defendants "could have" pepper-sprayed plaintiff). Moreover, in order to blatantly contradict a party's version of events, a recording must "clearly depict" the events *in their entirety*. *Luke,* 2021 WL 4453635, at *27–28 (citing *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012) (video footage did not "clearly depict" plaintiff's performance on field sobriety tests)). When video footage contradicts only *portions* of a party's account, it "does not permit the district court to discredit [the party's] *entire* version of the events." *Id*. (internal citations omitted and emphasis added).

### C. Qualified Immunity

To hold a government official liable in his individual capacity, the plaintiff must overcome the affirmative defense of qualified immunity. *McDonald v. Flake*, 813 F.3d 804, 812 (6th Cir. 2016). This judicial doctrine "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S.

10

58, 664 (2012).[4] "When properly applied, [it] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations and citation omitted).

Although qualified immunity is an affirmative defense, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). To shift the burden of proof to the plaintiff, the defendants need only raise a properly supported assertion of qualified immunity—that is, they need only "com[e] forward with facts to suggest that [they] acted within the scope of [their] discretionary authority during the incident in question." *Id*. The plaintiff must then point to sufficient admissible evidence to create a genuine issue of material fact as to whether the defendant violated a constitutional right, and must also show that the right is clearly established. *McDonald*, 813 F.3d at 812. The Court must believe the admissible evidence cited by the plaintiff and draw all justifiable inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). The Court must separately consider each defendant's liability and entitlement to qualified immunity. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013).

A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (internal quotations and citation omitted). Except in rare cases where the violation is obvious, "existing precedent must have placed the statutory or

---

[4] The Court may choose which of these issues—whether there is a statutory or constitutional violation, and whether the claimed right is clearly established—it will address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. Previous cases need not be fundamentally or materially similar, *Hope v. Pelzer*, 536 U.S. 730, 740 (2002), and a right may be clearly established even if no case is directly on point. *Ashcroft*, 563 U.S. at 741. But clearly established rights must not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations and citations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted) (emphasis in original).

### III. ANALYSIS

#### A. Objective Evidence In The Record Does Not Blatantly Contradict Plaintiff's Version Of Events.

Defendants argue that the Court should not adopt Plaintiff's version of events when ruling on their Motion because objective evidence blatantly contradicts Plaintiff's allegations. (Doc. No. 35, PageID 155.) Specifically, Defendants argue that video footage of the incident[5] "does not demonstrate any point where Plaintiff appeared to be assaulted by either [Defendant], had his thumb broken, or to be in distress." (*Id*.)

The Court agrees that the footage does not, at any point, explicitly portray either Defendant breaking Plaintiff's thumb. But a mere lack of corroboration is not the same as a blatant contradiction. *Coble*, 634 F.3d at 869-70. Moreover, the footage does not clearly depict the incident in its entirety. *Luke*, 2021 WL 4453635, at *27-28. Indeed, for

---

[5] Defendants' Exhibit B consists of several clips of footage from multiple cameras. The formatting of these clips and the layout of SOCF's cameras are such that the footage can only be properly viewed using a specialized program that allows the viewer to watch the clips in sequence. In these circumstances, the undersigned will not attempt to pincite to specific frames of footage.

extensive portions of the footage, neither Plaintiff's nor Defendants' hands are visible. Defendants essentially argue that Plaintiff does not *act like* someone whose thumb has just been broken. (Doc. No. 35, PageID 155 ("Video footage . . . does not demonstrate any point where Plaintiff *appeared* . . . to be in distress" (emphasis added).) But this Court cannot make judgments about credibility or disputed factual issues. Therefore, the video footage does not compel the Court to accept Defendants' version of events.

Defendants also argue that "Plaintiff's version of events is belied by his own actions [because] Plaintiff did not report the alleged broken thumb to Nurse Mault, who was present to assess him as soon as he was placed into his new cell." (Doc. No. 35, PageID 155.) To the extent that Defendants contend that Nurse Mault's evidence blatantly contradicts Plaintiff's claims, their argument is not well taken. Like the video footage, neither Plaintiff's alleged failure to report an injury to Nurse Mault nor her alleged failure to observe any injuries is "necessarily inconsistent" with Plaintiff's claims. *Luke*, No. 2021 WL 4453635, at *25. Moreover, it is undisputed that Plaintiff's thumb was diagnosed as being fractured just a few weeks later. (Doc. 35-12, PageID 397.) Therefore, the evidence about Plaintiff's encounter with Nurse Mault also does not compel the Court to accept Defendants' version of events.

- **B. Construing the Admissible Evidence In Favor Of Plaintiff, There Is A Genuine Issue Of Material Fact As To Whether Defendant Jewell Violated Plaintiff's Clearly Established Constitutional Right.**

The undersigned Magistrate Judge concludes that when the admissible evidence is construed in favor of Plaintiff, there is a genuine issue of material fact as to whether Defendant Jewell unlawfully used excessive force by breaking Plaintiff's thumb when

13

escorting him while Plaintiff was handcuffed and shackled. The undersigned further concludes that there is a genuine issue of material fact with respect to the issue of qualified immunity. Therefore, the undersigned recommends that Defendants' Motion for Summary Judgment (Doc. 35) be **DENIED** with respect to Defendant Jewell.

The Eighth Amendment prohibition on cruel and unusual punishment protects inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). But because prison officials may be justified in using physical force against inmates, "liability will be imposed only if the alleged assault []rises to the level of a constitutional deprivation." *Caldwell v. Moore*, 968 F.2d 595, 599 (1992). To make this determination, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court must also determine whether the subjective and objective components of an Eighth Amendment excessive force claim have been satisfied. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

The objective component of an excessive force claim requires Plaintiff's injury or pain to be "sufficiently serious" to offend "contemporary standards of decency." *Cordell* 859 F.3d at 580. An Eighth Amendment claim cannot be based upon *de minimus* use of physical force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). At the same time, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at

14

4; *see Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

The subjective component of an excessive force claim evaluates "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell*, 759 F.3d at 580. The need to maintain security and discipline may require Defendants to use physical force that would be actionable as an assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," they are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002). "Therefore, the issue is not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary." *Cordell*, 759 F.3d at 581 (cleaned up and internal quotations and citation omitted).

Construing the evidence in the record in the manner most favorable to Plaintiff, the undersigned finds that there is a genuine issue of material fact as to whether Defendant Jewell violated the Eighth Amendment by breaking Plaintiff's thumb. There is evidence that Plaintiff's thumb was broken in January 2021. Because Defendant Jewell has denied breaking Plaintiff's thumb, he has not shown that it was necessary to inflict such force for any legitimate penological purpose. Nor is any such need apparent from

15

the record, given that Plaintiff was handcuffed and shackled. There is also no claim that Defendant Jewell felt threatened. Applying the test set forth in *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), the undersigned concludes that there is a genuine issue of material fact as to whether Defendant Jewell unlawfully used excessive force.

    The undersigned further finds that there are genuine issues of material fact as to the objective and subjective components of Plaintiff's Eighth Amendment excessive force claim. As to the objective component, a jury could reasonably find that a broken thumb is not a *de minimus* injury. As to the subjective component, the undersigned's *Hudson* findings are relevant to show that the force allegedly used by Defendant Jewell was malicious and sadistic. *Taylor v. Davidson*, 832 F. App'x 956, 960-61 (6th Cir. 2020) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, given Defendant Jewell's denial that he broke Plaintiff's thumb and the fact that Plaintiff was handcuffed and shackled, if a jury were to find that Defendant Jewell broke Plaintiff's thumb, then it could reasonably find that he acted maliciously and sadistically. *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (the relevant issue is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur") (quoting *Whitley*, 475 U.S. at 321).

    Accordingly, when the Court construes the evidence in favor of Plaintiff, as it must do, it concludes that there is a genuine issue of material fact as to whether Defendant Jewell used excessive force in violation of the Eighth Amendment.

Given the existence of disputed issues of material fact, the undersigned further concludes that Defendant Jewell is not entitled to qualified immunity. The Sixth Circuit has held that "[i]f there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable jail official would have known such conduct was wrongful." *Cordell*, 759 F.3d at 588 (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001)). Because there is a factual dispute regarding when and how Plaintiff's thumb was broken, the jury must determine whether Defendant Jewell's use of force (if any) was objectively reasonable before the issue of qualified immunity can be adjudicated. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("Where, as here, the legal question of qualified immunity turns on which version of facts one accepts, the jury, not the judge, must determine liability.").

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 35) be **DENIED** with respect to Defendant Jewell.

C. **Construing the Admissible Evidence In Favor Of Plaintiff, There Is No Genuine Issue Of Material Fact As To Whether Defendant Wellman Violated Plaintiff's Clearly Established Constitutional Right.**

Plaintiff alleges that Defendant Wellman unlawfully failed to protect him from Defendant Jewell's use of force. Plaintiff's failure-to-intervene claim requires him to prove that Defendant Wellman (1) "observed or had reason to know that excessive force would be or was being used," and (2) "had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Summary judgment is proper if the record is "devoid of any suggestion" that Defendant Wellman

17

either actually observed or should have known that Defendant Jewell was applying excessive force to Plaintiff's left hand, wrist, fingers and/or thumb. *Id*.

Here, there is no evidence that Defendant Wellman observed or had reason to know that Defendant Jewell either did or would use unlawfully excessive force. Nor does any admissible evidence show that Defendant Wellman "had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429. *Cf. Goodwin v. City of Painesville*, 781 F.3d 314, 329 (6th Cir. 2015) (denying summary judgment on failure-to-intervene claim because that "case involves a prolonged application of force and the officers who allegedly failed to protect were directly involved").

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 35) be **GRANTED** with respect to Defendant Wellman.

## IV.     CONCLUSION

In sum, for the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 35) be **DENIED** with respect to Defendant Jewell and **GRANTED** with respect to Defendant Wellman.

**IT IS SO RECOMMENDED**.

*s/Caroline H. Gentry*  
Caroline H. Gentry  
United States Magistrate Judge

### Notice of Procedure on Objections

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).